UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD MAROZZI,

               Plaintiff,               6:17-cv-06864-MAT

     -v-                        **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

               Defendant.
_____

## INTRODUCTION

Richard Marozzi ("Plaintiff"), represented by counsel, brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying his application for supplemental security income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgement on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On April 4, 2014, Plaintiff protectively filed an application for SSI, alleging disability as of April 4, 2014. Administrative Transcript ("T.") 56. The claim was initially denied on June 13, 2014. T. 67-69. At Plaintiff's request, a

hearing was conducted on July 20, 2016, in Syracuse, New York by administrative law judge ("ALJ") Jennifer Smith. Plaintiff appeared with his attorney and testified. A vocational expert ("VE") also testified. T. 24-55.

The ALJ issued an unfavorable decision on August 2, 2016. T. 7-23. On June 28, 2017, the Appeals Council denied Plaintiff's timely request for review, making the ALJ's decision the final determination of the Commissioner. T. 1-5. Plaintiff then commenced this action.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 416.920(a). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. T. 12. At the hearing, Plaintiff testified he had been working twenty hours per week delivering pizzas and folding pizza boxes since January 4, 2016. However, the ALJ found this work did not rise to the level of substantial gainful activity. *Id.*

At step two, the ALJ determined that Plaintiff had the "severe" impairments of: left partially torn Achilles tendon; right Achilles injury; obesity; sleep apnea; osteoarthritis of the knees; cacovarus deformity of the left foot; low back pain; generalized anxiety disorder; attention-deficit hyperactivity

2

disorder; and androgen deficiency with testosterone replacement therapy. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 14. The ALJ specifically considered Listings 1.02 (Major Dysfunction of a Joint) and 1.04 (Disorders of the Spine) in making this determination. T. 13.

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with the additional limitations: should not climb ladders, ropes or scaffolds; should not kneel, crouch, balance or crawl; can occasionally stoop and climb ramps or stairs; should be allowed to use a cane for ambulation and change position every fifteen minutes, but can stay on-task at his work station during the position changes; and should only perform simple, routine and repetitive tasks. T. 14.

At step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work as a forklift operator or food deliverer. T. 17.

At step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, including the representative occupations of final assembler, ticket taker, and document preparer. T. 18. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 19.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v.*

*Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends remand is warranted because: (1) the ALJ improperly rejected the opinions of Plaintiff's treating physicians in favor of outdated opinions from a state agency review physician and a consultative examiner; and (2) the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain. For the reasons discussed below, the Court finds Plaintiff's arguments are without merit and accordingly affirms the Commissioner's final determination.

**I. Medical Opinions of Record**

**A. Dr. Michael Winters – Plaintiff's Primary Care Physician**

Plaintiff's medical record includes several statements that Dr. Winters completed for the Monroe County Department of Human Services regarding Plaintiff's employability and reasonable-accommodations needs. *See* T. 502-34.

On March 4, 2014, Dr. Winters noted that on examination, Plaintiff exhibited an abnormal gait, walked with a limp and was using a cane. Plaintiff's ability to perform a squat or heel and toe walking was not assessed. T. 505. All other examination findings were noted as "normal." T. 505-06. Dr. Winters opined Plaintiff's ability to both walk and stand was "very limited"

(limited to one-to-two hours total during an eight-hour workday). He gave the same level of limitation to Plaintiff's ability to push, pull and bend, as well as lift and carry. He opined Plaintiff's ability to sit was "moderately limited" to a total of two-to-four hours during an eight-hour workday and noted Plaintiff would need to get up to walk every thirty minutes to an hour, if sitting. T. 504, 506. Dr. Winters further opined these limitations were expected to last three months. T. 504.

On April 24, 2014, Dr. Winters opined Plaintiff would be able to participate in work, education, or training, for twenty hours per week, with reasonable accommodations. T. 510. He further opined Plaintiff would need to sit, stand, or ambulate for ten-to-fifteen minutes each hour. Dr. Winters opined Plaintiff would have the same limitations as he noted in the March 4, 2014 statement. T. 512. He expected these limitations to last twelve months. T. 510.

On June 18, 2014, Dr. Winters noted Plaintiff's abnormal gait on examination and opined Plaintiff was "very limited" in all functional areas, including his ability to see, hear and speak. T. 515-16. Dr. Winters opined Plaintiff would have these limitations for six months. T. 514.

On August 13, 2015, Dr. Winters opined Plaintiff was "very limited" in all functional areas but was able to participate in activities such as work, education, and training, for up to forty

hours per week with reasonable accommodations. T. 525-27. He opined Plaintiff should not perform any heavy lifting or prolonged standing and should be allowed frequent breaks. T. 525.

On December 11, 2015, Dr. Winters noted Plaintiff continued to walk with a cane and had a limp. No other "abnormal" examination findings were noted. T. 530-31. Dr. Winters opined Plaintiff was able to participate in activities for ten-to-fifteen hours per week, with reasonable accommodations. T. 529. He opined Plaintiff was "very limited" in his ability to walk, stand, sit, push, pull, bend, lift and carry. T. 531. Dr. Winters expected these limitations to last for six months. T. 529.

In her decision, the ALJ gave "some" weight to Dr. Winter's opinions. In making this determination, the ALJ noted that the only objective findings Dr. Winter cited to support his opinions were Plaintiff's weight and gait. T. 16. The ALJ further reasoned that Dr. Winter did not test Plaintiff's ability to squat or walk on his heels and toes, and that the rest of Dr. Winter's physical examinations of Plaintiff were normal. Moreover, the ALJ noted, Plaintiff's ability to sit, which Dr. Winter opined was "very limited" in several opinions, would not be affected by his gait, leaving only Plaintiff's weight as a basis for that limitation. T. 16.

**B.   Dr. Steven Scofield – Plaintiff's Treating Physician**

On January 20, 2015, Dr. Scofield, who works in the same medical office as Dr. Winters, examined Plaintiff for a Monroe County Department of Human Services assessment. T. 518-21. Dr. Scofield noted Plaintiff was morbidly obese and walked with a limp. Plaintiff exhibited a decreased range of motion in his back and had pain and tenderness in his left Achilles heel. T. 520-21. Dr. Scofield opined Plaintiff was "very limited" in all functional areas and was expected to have these limitations for six months. T. 519, 521.

The ALJ also gave "some" weight to Dr. Scofield's opinion because, like Dr. Winter's opinions, Dr. Scofield's opinion lacked the objective evidence necessary to support significant sitting limitations. *Id*. The ALJ also noted that although Dr. Scofield cited "chronic orthopedic disease" as the basis of his opinion, Plaintiff has had little treatment and no diagnostic testing for his back pain. *Id*. Furthermore, the ALJ noted that November 2015 imaging revealed only "minimal to mild" degenerative changes in Plaintiff's knees, and Plaintiff did not mention any problems with sitting to Dr. Scofield. T. 16-17. Finally, the ALJ reasoned that Plaintiff's testimony he delivers pizzas twenty hours per week and cooks and cleans supports the finding he would be able to stand and/or walk with a cane for at least two hours per day. T. 17.

### C. Dr. Aharon Wolf – Consultative Examiner

On May 30, 2014, Plaintiff underwent a consultative physical examination with Dr. Aharon Wolf. T. 298-301. Dr. Wolf noted Plaintiff's primary complaints were anxiety for the past few months, right knee pain for the past few months, left ankle sprain with damage to the Achilles tendon, and low back pain for the past ten years. Plaintiff reported no hospitalizations and that he was told he is not a surgical candidate to repair his Achilles tendon due to a lack of blood flow in his legs. T. 298. Plaintiff reported living with his parents, cooking five times a week and cleaning once per week. He reported his mother does the shopping and that he does not do any laundry. Plaintiff showers and dresses himself daily. T. 299.

Upon examination, Plaintiff was six feet tall and weighed 485 pounds. Dr. Wolf noted Plaintiff was in moderate distress during the examination with shortness of breath. Plaintiff's gait was antalgic with limping onto the left and taking pressure off of the right leg. Dr. Wolf noted Plaintiff's use of a cane, which made his gait more stable and, in Dr. Wolf's opinion, was medically necessary. Plaintiff had difficulty getting off the exam table. T. 299. Plaintiff's cervical spine and lumbar spine showed full flexion, extension, lateral flexion bilaterally and full rotary movement bilaterally. Straight let raising test was negative on both sides. Plaintiff exhibited full range of motion

9

in his shoulder, elbows, forearms, and wrists. Plaintiff's hip flexion/extension was 60 degrees bilaterally, with rotation interior at 20 degrees bilaterally. Backward extension was 10 degrees, with full adduction. Plaintiff's knee flexion/extension was 90 degrees on the right and 110 degrees on the left. Ankle dorsiflexion was 10 degrees on both sides. Plaintiff had full plantar flexion. T. 300. An x-ray of Plaintiff's left ankle was normal. An x-ray of Plaintiff's back could not be performed because Plaintiff exceeded the table's weight limit. T. 301.

Dr. Wolf diagnosed Plaintiff with right knee pain, left ankle pain, anxiety, hypertension, and low back pain. He opined Plaintiff had moderate limitations for climbing, bending, squatting, and walking. *Id.* The ALJ gave Dr. Wolf's opinion "great" weight. The ALJ found Dr. Wolf's opinion was consistent with the objective medical evidence of record. T. 15. Specifically, the ALJ noted Dr. Wolf's examination findings that Plaintiff was short of breath; had difficulty getting off the exam table; had some restricted motion in his hips, knees, and ankles; and was limping onto his left leg, taking pressure off his right leg. T. 15-16. However, Plaintiff had a full range of motion through his cervical and lumbar spine, shoulders, elbows, forearms, and wrists. The straight leg raising test was negative on both legs and his joints were stable and nontender. T. 16.

**D.  Dr. S. Putcha – State Agency Review Physician**

On June 12, 2014, Dr. Putcha completed a case analysis and RFC assessment based on his review of Plaintiff's medical record. T. 60-63. Dr. Putcha opined Plaintiff was able to lift/carry ten pounds occasionally and less than ten pounds frequently. T. 61. He opined Plaintiff could stand and/or walk for a total of two hours during a normal workday, with normal breaks. He also could sit for about six hours, with normal breaks. *Id.* Dr. Putcha further opined Plaintiff could occasionally climb ramps and stairs, ladders, ropes and scaffolds; and occasionally balance, stoop, kneel, crouch and crawl. These limitations were due to Plaintiff's obesity and ankle pain. T. 61-62. Dr. Putcha suggested Plaintiff be limited to sedentary work and noted he was able to walk with the use of a cane. T. 61.

The ALJ also gave "great" weight to Dr. Putcha's opinion, noting it was based on a review of much of Plaintiff's record and that the regulations require the findings of fact made by state agency medical consultants to be treated as expert opinion evidence of nonexamining sources at the hearing level and Appeals Council level of administrative review. T. 15 *citing* Social Security Regulation ("SSR") 96-6p, 1996 WL 374180. Furthermore, the ALJ found Dr. Putcha's opinion was generally consistent with Dr. Wolf's opinion and with the objective medical evidence of record. T. 15.

## II.  The ALJ Properly Justified the Weight Accorded to Each Medical Opinion

Plaintiff argues that the ALJ improperly weighed the opinions of Plaintiff's treating primary care physicians, Dr. Winter and Dr. Scofield. He further contends the ALJ improperly relied on the opinions of consultative examiner Dr. Wolf and state agency review physician Dr. Putcha. For the reasons set forth below, the Court finds the ALJ properly supported her determinations of the weight to be accorded to each medical opinion.

Pursuant to the regulations applicable to Plaintiff's claim, an ALJ is required to give controlling weight to the opinion of a treating physician so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). However, it is permissible for an ALJ to give less than controlling weight to a treating physician's opinion he or she finds does not meet this standard, provided he or she "comprehensively set[s] forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see* 20 C.F.R. § 416.927(c)(2) (stating the agency "will always give good reasons in our notice of determination or decision for

the weight we give to [the claimant's] treating source's opinion").

When determining how much weight to afford any medical opinion in the record, "[r]egardless of its source," an ALJ must consider certain factors, including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran, 362 F.3d at 32; 20 C.F.R. § 416.927(c). However, an ALJ "does not have to explicitly walk through these factors, so long as the Court can 'conclude that the ALJ applied the substance of the treating physician rule ... and provide[d] 'good reasons' for the weight she gives to the treating source's opinion.'" Hall v. Colvin, 37 F. Supp.3d 614, 625 (W.D.N.Y. 2014) (quoting Halloran, 362 F.3d at 32).*

### A. The ALJ Gave Legitimate Reasons for Not Affording Controlling Weight to the Opinions of Plaintiff's Treating Physicians

*The ALJ set forth several legitimate reasons for not giving "great" weight to the opinions of Dr. Winter and Dr. Scofield that Plaintiff had significant limitations in nearly all functional areas, including sitting. Specifically, the ALJ noted*

*that the objective medical findings associated with all of Dr. Winter's opinions were generally "normal" with the exception of Plaintiff's limping gait and obesity. Furthermore, Plaintiff's heel and toe walking and ability to squat were not tested. T. 16. Similarly, Dr. Scofield's opinion had little objective evidence to support its significant sitting limitations. These were appropriate considerations to take into account when weighing the opinions. See Cosnyka v. Colvin*, 576 F. App'x 43, 45 (2d Cir. 2014) (summary order) (discounting treating physician's opinion because it was not supported by objective medical evidence); *Carvey v.* Astrue, 380 F. App'x 50, 58 (2d Cir. 2010) (summary order) (record was sufficient to support ALJ's decision to not give controlling weight to treating physician's opinion as to sitting, standing, and walking limitations); *Alachouzos v. Comm'r of Soc. Sec.*, No. 11 CIV. 1643 BMC, 2012 WL 601428, at *3-5 (E.D.N.Y. Feb. 23, 2012) (the opinion of a treating physician that is based mainly on the claimant's complaints rather than on objective findings is not entitled to controlling weight).

The ALJ further noted that the portions of the opinions of Dr. Winter and Dr. Scofield that *were* supported by substantial evidence – namely Plaintiff's limping gait and obesity – were incorporated into the RFC finding. T. 16. Specifically, their opinions that Plaintiff would be unable to perform prolonged standing and would need postural changes to address his

subjective complaints of pain are consistent with the RFC finding that Plaintiff was limited to sedentary work and should be permitted to change position every fifteen minutes. *See* T. 14, 16.

Insofar as Plaintiff argues the ALJ failed to consider Plaintiff's treatment history with Dr. Winter that spanned approximately three years prior to the ALJ's decision, the ALJ need not undertake a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order). As the Commissioner notes, even though Dr. Winter had a three-year treatment history, Plaintiff saw him with varying frequency, sometimes at six or seven-month intervals during the relevant period. Rather than prescribe aggressive treatment, Dr. Winter consistently recommended weight loss and over-the-counter pain relievers to address Plaintiff's symptoms.*

### B. *The ALJ Gave Legitimate Reasons for Affording "Great" Weight to the Opinions of Dr. Wolf and Dr. Putcha*

*Plaintiff further argues the ALJ improperly relied on the "outdated" opinions of Dr. Wolf and Dr. Putcha to craft the RFC finding. The Court disagrees.*

*"[A]n ALJ may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the*

15

*underlying medical evidence." Suarez v. Colvin, 102 F. Supp.3d 552, 577–78 (S.D.N.Y. 2015) (citing Rosier v. Colvin, 586 F. App'x 756, 758 (2d Cir. 2014) (summary order) (ALJ properly relied on evaluations by a consultative examiner to reject treating physician's opinion where other substantial evidence in the record was inconsistent with treating physician's opinion)). Furthermore, "[i]t is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence." Barber v. Comm'r of Soc. Sec.*, No. 615CV0338GTSWBC, 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016*) (citing 20 C.F.R. §§ 416.912(b)(6) (eff. until Mar. 27, 2017), 416.913(c) (eff. until Mar. 27, 2017), 416.927(e) (eff. until Mar. 27, 2017); *Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.")), *report and recommendation adopted*, No. 615CV0338GTSWBC, 2016 WL 4402033 (N.D.N.Y. Aug. 18, 2016).

The ALJ's decision to give "great" weight to the opinions of Dr. Wolf and Dr. Putcha is supported by substantial evidence, which includes, as discussed above, much of the same evidence relied on to discount the probative value of Dr. Winter and

Dr. Scofield's opinions. *See Frawley v. Colvin, No. 5:13-CV-1567 (LEK/CFH), 2014 WL 6810661 at \*5-7, \*9-10 (N.D.N.Y. Dec. 2, 2014) (ALJ's decision to give "great" weight to the opinion of a consultative examiner was supported by substantial evidence because the opinion was consistent with the same medical evidence the ALJ relied on to reject the treating source's opinion). In particular, Dr. Wolf supported his opinion with the objective findings from his examination of Plaintiff, and Dr. Putcha supported his opinion with the objective evidence available in Plaintiff's record.*

*The Court also rejects Plaintiff's contention that the ALJ should not have relied on Dr. Wolf and Dr. Putcha's opinions because they were "outdated". The mere passage of time does not necessarily render an opinion outdated or stale. See Carthron-Kelly v. Comm'r of Soc. Sec., No. 515CV0242GTSWBC, 2017 WL 9538379, at \*6 (N.D.N.Y. Sept. 25, 2017)* ("[T]he mere addition of medical records after a State agency medical examiner's review does not render the examiner's opinion invalid. To be sure, the 2013 MRI described [p]laintiff's cervical protrusion at C3-4 as 'large,' as compared to 'small' in 2009. However, Plaintiff fails to specify how the MRI or additional treatment notations were inconsistent with Dr. Junejo's findings or would alter the ALJ's determination. The evidence received after Dr. Junejo's review did not contain any evidence of additional limitations.").

Instead, a medical opinion may be outdated if subsequent treatment notes indicate a claimant's condition has deteriorated. *Jones v. Colvin*, No. 13-CV-06443, 2014 WL 256593, at *7 (W.D.N.Y. June 6, 2014) (finding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"). A more remote medical opinion may in fact constitute substantial evidence if it is consistent with the record as a whole. *See Andrews v. Berryhill*, No. 17-CV-6368(MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err in relying on older opinions where there was no indication that the plaintiff's "condition had *significantly* deteriorated after the issuance of . . . [the] opinions") (emphasis added).

Plaintiff also argues that two developments in his medical record would likely have altered Dr. Putcha's opinion. The first is an intra-articular knee injection he received for his right and left knee pain performed in December 2015. The second is the May 2016 diagnosis of ulnar tunnel syndrome of the right wrist from folding boxes at his job.

In response to Plaintiff's argument his knee pain had deteriorated after Dr. Putcha assessed the record and gave his opinion, the record clearly shows Dr. Putcha considered Plaintiff's complaints of knee pain. *See* T. 15, 16, 57, 56-62, 226, 266-68, 298-301. As the Commissioner points out, there will

invariably be a gap between the time a state agency medical consultant's review and the ALJ's decision. But Plaintiff has failed to demonstrate his knee condition deteriorated to the extent that it would no longer comport with the limitations Dr. Putcha suggested and which the ALJ ultimately considered in the RFC finding. *See Andrews*, 2018 WL 2088064, at *3; *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) (medical opinion issued two years prior to ALJ's decision was not stale because there was no evidence that the claimant's condition had significantly deteriorated after the opinion was issued and the opinion was consistent with the consultative examiner's clinical examination and with the record as a whole).

At the time Plaintiff was diagnosed with ulnar tunnel syndrome, Dr. Winter prescribed an anti-inflammatory medication and suggested he try an elbow brace to alleviate his discomfort. However, Dr. Winter noted he was "not overly confident" Plaintiff would comply with his medication regimen because he was hesitant to take any daily medication. T. 488. One month later, Dr. Scofield, who was in practice with Dr. Winter, completed his medical source statement and made no note of any pain or limitations associated with Plaintiff's wrist. *See* T. 499. Moreover, the ALJ did not find ulnar tunnel syndrome to be a medically determinable impairment – a finding Plaintiff does not

contest. Moreover, the record contains no diagnostic testing or ongoing treatment to support the diagnosis. Accordingly, the Court finds Dr. Putcha's opinion was not affected by not having Plainitff's ulnar tunnel syndrome diagnosis before him when crafting his medical opinion.

For all the reasons set forth above, the Court finds no error in the ALJ's consideration and the weight given to the medical opinions of record. Accordingly, remand is not warranted on this basis.

### III. The ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain

Plaintiff also argues the ALJ failed to properly evaluate his subjective complaints of pain and further failed to support her credibility finding with substantial evidence. For the reasons set forth below, the Court finds these arguments are without merit.

"Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his [or her] decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if [the] disability determination is supported by substantial evidence." *Hargrave v. Colvin*, No. 12-CV-6308 (MAT), 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted). While the

Commissioner's regulations set forth seven factors the ALJ is to consider in assessing credibility, the ALJ is not required to explicitly discuss each of the factors, so long as he or she sets forth the reasoning for his or her credibility determination and that determination is adequately supported by the evidence in the total record. "[T]he predominant focus of a credibility analysis must be the entire case record as a whole, and . . . the adjudicator [need only] show specific cause, grounded in evidence, for his or her conclusion." *Snyder v. Barnhart*, 323 F. Supp.2d 542, 547 (S.D.N.Y. 2004). "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Andrisani v. Colvin*, 1:16-CV-00196 (MAT), 2017 WL 2274239, at *3 (W.D.N.Y. May 24, 2017) (internal quotation omitted).

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence of record. T. 17. In particular, Plaintiff reported he prepares simple meals, does some cleaning and shopping, washes his own dishes, watches television, and socializes with family members. T. 13. Also, at the time of the hearing, Plaintiff had been working at a pizza shop, delivering pizzas and folding boxes

twenty hours each week, for six months. T. 17. Furthermore, the ALJ noted that Plaintiff made no mention to Dr. Wolf of problems sitting and testified that he only took ibuprofen for his pain. T. 16-17. The ALJ reasonably found that Plaintiff's activities of daily living, including driving and the ability to engage in part-time work, were inconsistent with Plaintiff's allegations of disability. *See Pennock v. Comm'r of Soc. Sec.*, 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016) ("An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination."), *report and recommendation adopted*, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016). Moreover, the ALJ noted that at the hearing, the VE testified that delivering food is not a sedentary job but a medium job, though Plaintiff performed it at the light level. *Id*. Accordingly, the ALJ permissibly reasoned that someone capable of Plaintiff's activities, is also capable of sedentary work with the additional limitations of standing and/or walking with the assistance of a cane for at least two hours per day, and able to change positions every fifteen minutes, as directed by the RFC finding. *See Andrews*, 2018 WL 2088064, at *6 (ALJ did not err finding plaintiff was not entirely credible, given her ability to do laundry, make simple meals, sweep floors, wash dishes, occasionally drive, and maintain a work schedule, which comported

with the RFC finding that plaintiff could perform light work, with additional limitations).

For the foregoing reasons, the Court finds the ALJ's credibility determination was reasonable and supported by substantial evidence. Accordingly, the Court finds remand is not warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 11) is denied. The Commissioner's opposing motion for judgment on the pleadings (Docket No. 15) is granted. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     February 8, 2019
           Rochester, New York